UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| DEBORAH K. HAYES, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | CAUSE NO. 3:11-CV-265 CAN |
| MICHAEL J. ASTRUE Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On June 27, 2011, Plaintiff, Deborah K. Hayes ("Hayes"), filed her complaint seeking review of the final decision of the Defendant, Commissioner of Social Security ("Commissioner"). She filed her opening brief on November 2, 2011, and the Commissioner filed his response on February 13, 2012. Hayes filed her reply brief on March 5, 2012. This Court now enters its ruling based on the consent of the parties and 28 U.S.C. § 636(c).

**I.    PROCEDURE**

On March 9, 2003, Hayes filed for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), as well as supplemental security income ("SSI") under Title XVI of the Act. Her application arose from an alleged disability beginning on November 14, 2002. Her claims were denied initially on September 3, 2004, and again upon reconsideration on February 3, 2005. Hayes appeared and testified before an administrative law judge ("ALJ") on February 16, 2007. On November 10, 2009, the ALJ issued his decision, denying Hayes' application for DIB and SSI. Hayes then filed her complaint in this Court pursuant to 42 U.S.C. § 405(g).

**II.    RELEVANT BACKGROUND**

Hayes was born on September 11, 1956 and was 53 at the time the ALJ issued his decision (Tr. 76). She has a degree in medical assistance and past work experience as a stocker, home health aide, bus driver, nurse aide, and biological science aide (Tr. 82, 877).

## A.    MEDICAL EVIDENCE

In January 2002, state that Hayes injured herself while lifting fifty pound boxes up to a shelf (Tr. 134). Since then, she has complained of numbness, tingling, and pain in the left arm and hand. *Id.* The examination did not reveal any nerve damage that would explain the whole arm numbness. *Id.* However, there was some evidence of carpal tunnel syndrome. *Id.*

In June and July 2002, Hayes received epidural steroid injections for the pain in her neck and left arm (Tr. 141, 143). Also in July, Hayes was treated for anxiety and she was prescribed an antidepressant (Tr. 145-146). In August 2002, an MRI showed evidence of disc herniation at C4-5 (Tr. 139). Hayes received another epidural injection during that visit. *Id.* On January 23, 2003, Hayes underwent spinal surgery and was released the next day (Tr. 165-166). In July 2003, a physician noted that Hays had been hospitalized for a "slight mental breakdown" (Tr. 183). He prescribed her a pain reliever and an antidepressant, as well as physical therapy. *Id.*

Treatment notes from May 2003 state that Hayes was scheduled to return to work with no restrictions on May 26, 2003 (Tr. 185). Hayes underwent a psychological evaluation on July 13, 2003 (Tr. 213). It was during this evaluation that Hayes reported that she did not receive workman's compensation because she had not reported the injury within the required time period. *Id.* The psychologist noted that Hayes should follow through with treatment for her anxiety with her primary physician (Tr. 217). She also stated that Hayes would benefit from vocational rehabilitation services. *Id.*

In August 2004, a state agency reviewing physician found that Hayes had the capacity to work at a medium exertional level (Tr. 252-259). In October 2004, Hayes underwent a diagnostic ultrasound, which showed evidence of nerve root inflammation in the spine (Tr. 374-375). She began physical therapy again in December 2004 (Tr. 284-285).

On January 3, 2005, Hayes received another epidural steroid injection (Tr. 354). Additionally, she was treated for a depressive disorder and panic attacks (Tr. 308). In February, she was noted to have sadness, depression, crying, irritability, withdrawal, and suicidal thoughts (Tr. 306-307). It was later reported that her fiancé had recently passed away and her anxiety was increasing (Tr. 304). She was prescribed an antidepressant and an antianxiety medication. *Id*.

In August 2005, Hayes reported to a pain medicine specialist that the epidural injections she received were not working (Tr. 351). She returned to physical therapy in December 2005 (Tr. 386). Physical therapy lasted through July 2007, and Hayes was instructed to refrain from household chores, but perform all activities of daily living necessary for life (Tr. 648). In an undated letter, Hayes' treating physician, Dr. Galanes, opined that Hayes could not hold a meaningful job because of the prescription pain medications she was taking (Tr. 448).

In September 2007, Hayes went to the emergency room complaining of worsening pain in the right side of her back (Tr. 698). She denied any heavy lifting. *Id*. Hayes was told by the emergency room physician that she could not be prescribed anything stronger than the prescription pain reliever she already had at home (Tr. 697). She was instructed to try conservative measures such as ice and over-the-counter pain relievers before using her prescription. *Id*.

A December 2007 consultative examination showed slightly decreased range of motion

3

in the cervical spine, but within normal limits in other areas (Tr. 650-658). She had a normal gait and tandem walk, good muscle strength, normal grip, and normal sensation and reflexes. *Id*. Also in December 2007, a state agency reviewing physician found that Hayes was capable of performing medium work with occasional climbing of ladders, ropes, and scaffolds (Tr. 679-686). Dr. Galanes wrote in March 2008 that Hayes suffered from tremendous pain post-surgery (Tr. 687). However, during an examination the same day, Hayes reported to Dr. Galanes that her prescription pain reliever was working nicely and that she had no further complaints (Tr. 749). Between April and July 2008, Hayes was treated with physical rehabilitation for neck, middle back, and left shoulder blade pain (Tr. 704-721). She continued therapy through March 2009 (Tr. 768).

### B. ALJ Hearing on February 16, 2007

#### 1. Hayes' Testimony

Hayes testified that she stopped working in 2002 after getting hurt at work and having surgery (Tr. 875). After her surgery, she earned a degree in medical assistance (Tr. 877). She said that she applied for jobs, but no one would hire her because of the prescriptions she was taking and her inability to stay seated throughout the day (Tr. 878-879). She was able to sit while in school because the instructors accommodated her at the back of the room (Tr. 882).

Hayes said that she suffered from pain in her neck, shoulders, and back, and also had headaches (Tr. 878). She also testified that she sometimes had trouble with focus, concentration, and memory (Tr. 885). She was able to cook, dress, bathe, and drive a car (Tr. 880). During the day she sometimes went to the mall to walk around (Tr. 881). Hayes said that she was not able to sit through a movie, but then stated she liked to go to the movies and go out to eat. *Id*.

4

Finally, she said that she was able to sit for ten minutes, stand for five to ten minutes, comfortably lift a piece of paper, and walk for half of a block without pain (Tr. 879-880). She was taking four different prescription pain relievers and antidepressants at the time of the hearing and noted that her doctor wanted to perform another spinal surgery (Tr. 880-882).

Hayes' daughter also testified at the hearing (Tr. 885). She stated that she was doing almost everything for her mother since she moved back in with her (Tr. 886). She said that her mother used to perform all of the housework before she quit working, but now has problems doing household chores. *Id*.

### 2. Vocational Expert Testimony

The ALJ asked a hypothetical about a person with Hayes' age, education, and work experience, with limitations to light work, no overhead reaching with the left upper extremity, frequent balancing, stooping, kneeling, and crouching, and no crawling (Tr. 887). He asked if this hypothetical person could perform any of Hayes' past employment. *Id*. The vocational expert testified that as usually performed, this hypothetical individual could perform Hayes' jobs as bus driver and biological science aide (Tr. 888). The ALJ then limited the hypothetical person to someone who had to avoid extremes of cervical extension. *Id*. This eliminated the bus driver position, but the biological science aid position was still suitable. *Id*.

### C. ALJ Determination

On August 13, 2007, the ALJ found that Hayes was not disabled (Tr. 541). He found that she had the residual functional capacity ("RFC") to perform light work that does not require crawling, overhead reaching with the left upper extremity, or more than frequent climbing, balancing, stooping, kneeling, or crouching (Tr. 537). He also noted that Hayes had been

scheduled to return to work in May 2003, and a doctor refused to grant an extension (Tr. 528).

### D. ALJ Hearing on May 22, 2009

#### 1. Hayes' Testimony

At a subsequent hearing, Hayes testified that her pain had worsened (Tr. 896). She also said that she no longer drove (Tr. 897). She was still taking the same prescription medications, but her anxiety attacks had worsened (Tr. 898-899).

#### 2. Vocational Expert Testimony

Hayes' previous work experience as a biological aide was described as light and unskilled as performed (Tr. 903-904). The ALJ asked the vocational expert a hypothetical about an individual with Hayes' age, education and past relevant work who was limited to light work, no overhead reaching and lifting with the upper extremity, no more than frequent climbing, balancing, stooping, kneeling, and crouching, and no crawling (Tr. 904). The vocational expert said that the biological aide position was the only job of Hayes' past relevant work that would apply to an individual with these limitations (Tr. 905). The vocational expert also stated that there were other jobs in the light and unskilled sector, including cashier (40,000 jobs), shipping and receiving (2,000 jobs), and product inspector (10,000 jobs). *Id*. The vocational expert was then asked about an individual with limitations consistent with Hayes' testimony. *Id*. The vocational expert said that all employment would be eliminated. *Id*.

### E. ALJ Determination

On November 10, 2009, the ALJ found that Hayes was not disabled (Tr. 32). He determined that Hayes had the RFC to perform light work, except that she could not perform overhead reaching or lifting with the upper left extremity, crawling, frequent climbing,

6

balancing, stooping, kneeling, or crouching (Tr. 29). The ALJ found that Hayes was capable of performing past relevant work as a biological aide (Tr. 31).

## III. ANALYSIS

### A. Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. *See* 42 U.S.C § 405(g); *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Golembiewski v. Barnhardt*, 322 F.3d 912, 915 (7th Cir. 2003). However, an ALJ's legal conclusions are reviewed *de novo*. *Haynes*, 416 F.3d at 626. Substantial evidence is more than a scintilla and means such relevant evidence as a reasonable mind might accept to support such a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. *Haynes*, 416 F.3d at 626. An ALJ decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

### B. Hayes' Motion for Remand

Hayes must establish that she is disabled to be entitled to benefits under the Social Security Act. *See* 42 U.S.C. § 423(a)(1)(D). The Act specifically defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: (1) the

claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920; *Briscoe*, 425 F.3d at 352. If the ALJ can find that the claimant is not disabled at any step, he does not go on to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

An impairment or combination of impairments is considered severe if the applicant's physical or mental ability to perform basic work activities is significantly limited. 20 C.F.R. § 404.1521(a). The combination of impairments is taken into account, even if each individual impairment would not be considered severe. 20 C.F.R. § 404.1523. If the applicant does not meet this requirement, then the applicant is not disabled. 20 C.F.R. § 404.1520(c). In order to be considered severe, the impairment must either cause the applicant's death, or has lasted or is expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. When assessing the severity of an impairment, the applicant's age, education, and work experience are not considered. *Id.* However, it is still possible for the applicant to have been disabled for a period of time in the past even if the applicant currently does not have a severe impairment. *Id.*

If the applicant's impairment or combination of impairments meets the requirements outlined in Subpart P, Appendix 1 and also meets the duration requirement, then the applicant is disabled without considering the applicant's age, work experience, or education. 20 C.F.R. § 404.1520(d). Once the ALJ finds that the applicant is not disabled after the first three steps, then

8

the ALJ assesses the RFC. 20 C.F.R. § 404.1520(e). The RFC is the applicant's ability to do physical and mental work activities on a sustained basis despite limitations. *Id.* Once the RFC is determined, it is compared to the applicant's past relevant work to see if the applicant could still perform that type of work. 20 C.F.R. § 404.1520(f). If the applicant could still perform past relevant work, then the applicant is not disabled. *Id.* Past relevant work includes any substantial work performed within the last 15 years. 20 C.F.R. § 404.1560(b)(1). The applicant has the burden to prove the first four steps, but upon reaching step five, the burden shifts to the Commissioner. 20 C.F.R. § 404.1520(e).

First, the Court must determine if the ALJ's Listing 1.04 determination was reasonable. Next, the Court must consider whether the ALJ's RFC determination was supported by substantial evidence. Third, the Court must decide if the ALJ's credibility determination was reasonable. Finally, the Court must decide if the ALJ's Step Four finding was supported by substantial evidence.

### 1. The ALJ reasonably concluded that Hayes' did not have an impairment or combination of impairments that met Listing 1.04.

Hayes first alleges that the ALJ failed to properly consider whether she met or equaled Listing 1.04 for disorders of the spine or spinal cord. Listing 1.04(A), in relevant part, requires:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). . . .

20 C.F.R. § 404, subpt. P, app. 1. In order to receive disability benefits, the claimant "must satisfy all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). Further, a claimant's self-reported symptoms alone cannot establish a disability. *See* 20

C.F.R. § 1529(a).

Here, the ALJ explicitly stated that the "most recent MRI of [Hayes'] neck, performed in June 2008, showed a stable C5-7 fusion and degenerative disc disease at C4-5 but no stenosis" (Tr. 29). He also noted the December 2007 consultative examination that showed decreased range of motion in the spine, but normal sensation and reflexes (Tr. 31). Listing 1.04(A) requires limited range of motion of the spine *and* sensation or reflex loss. 20 C.F.R. § 404, subpt. P, app. 1. Therefore, since Hayes did not meet the requirements of the Listing, this Court finds that the ALJ reasonably determined that Hayes did not meet the Listing 1.04 requirements.

Hayes also alleges that the ALJ did not consider her ailments in combination in the disability determination. An ALJ is required to consider the combined effects of a claimant's impairments, including impairments that, considered alone, are not severe. *See* 20 C.F.R. § 404.1523. An ALJ's ruling that a claimant's impairments are not severe either singly or in combination is sufficient to meet this requirement. *See Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). Here, the ALJ stated that Hayes did not have an impairment or combination of impairments that met the Listing (Tr. 29). Therefore, this Court finds that the ALJ reasonably determined that Hayes' combination of impairments did not medically equal Listing 1.04.

### 2. The ALJ's RFC determination was supported by substantial evidence.

Hayes next contends that the ALJ failed to properly weigh and consider all of the evidence of record when making his RFC determination. Specifically, she alleges that the ALJ did not give sufficient deference to Dr. Galanes. The determination of a claimant's RFC is the ALJ's responsibility. 20 C.F.R. § 404.1546(c). When determining a claimant's RFC, the ALJ must consider the entire record, but the ALJ is not required to rely entirely on a particular physician's

opinion or choose between the opinions of any of the claimant's physicians. *Schmidt v. Astrue,* 496 F.3d 833, 845 (7th Cir. 2007). "A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical findings and consistent with substantial evidence in the record." *Skarbek v. Barnhart,* 390 F.3d 500, 503 (7th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). If the ALJ does not give the treating physician's opinion controlling weight, he must present "good reasons" for discounting that opinion. 20 C.F.R. §404.1527(d)(2). An ALJ's conjecture is never a permitted basis for ignoring a treating physician's views. *Moss v. Astrue,* 555 F.3d 556, 560 (7th Cir. 2009).

In an undated letter, Dr. Galanes opined that Hayes could not hold a meaningful job (Tr. 448). The ALJ gave less weight to this opinion because it "offer[ed] only a conclusion about disability and not specific functional limitations," and Dr. Galanes' opinion was based on Hayes' subjective complaint that she was in "tremendous pain" (Tr. 30, 448). Additionally, the ALJ found that the opinion was not supported by objective medical evidence (Tr. 30). Upon examination in December 2007, Hayes was found to have a limited range of motion in her spine, but normal ranges in all other areas (Tr. 650-658). Additionally, in March 2008, she reported to her doctor that her prescription pain reliever was working well and that she had no further complaints (Tr. 749). Finally, Dr. Galanes' opinion was discounted because treatment records did not show any changes in the dosage of Hayes' pain medication or any side effects from it (Tr. 31). Therefore, this Court finds that the ALJ provided "good reasons" for discounting Dr. Galanes' opinion. *See* 20 C.F.R. § 404.1527(d)(2).

Hayes also contends that the ALJ disregarded evidence of anxiety and depression. The ALJ did discuss her depression and panic disorder, but found that they caused no more than minimal

limitation in the claimant's ability to perform basic mental work activities (Tr. 28). He noted that Hayes did not receive any formal mental health treatment, but received antidepressants and antianxiety medications from her physician. *Id*. She did undergo psychological evaluation, but it indicated that her depressive symptoms were mild or less. *Id*. Therefore, this Court finds that the ALJ considered Hayes' depression and anxiety, and supported his RFC determination with substantial evidence.

### 3. The ALJ's credibility determination was reasonable.

Hayes also alleges that the ALJ's credibility determination was improper. Because an ALJ is in a special position where he can hear, see, and assess witnesses, an ALJ's credibility determinations are given special deference; and, as a result, an ALJ's credibility determinations will only be overturned if they are patently wrong. *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003). Here, the ALJ looked at the objective medical evidence and Hayes' testimony and found her to be not credible (Tr. 30). He noted that Hayes was stable after spinal fusion surgery and received relief from her medication (Tr. 30-31). Additionally, in the ALJ's prior decision, which was incorporated by reference, he noted that Hayes was scheduled to return to work in May 2003, and her doctor refused to give her an extension (Tr. 538). Therefore, this Court finds that the ALJ's credibility determination was reasonable.

### 4. Substantial evidence supports the ALJ's Step Four finding.

Finally, Hayes contends that the ALJ's decision that she could perform her past relevant work was improper. Past relevant work is work done in the previous 15 years, "that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). If the claimant's past job did not require her to perform activities in excess of her

RFC, she will be found not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iv). Also, if it is found that she can make an adjustment to other work, she will be found not disabled. *See* 20 C.F.R. § 416.920(g).

In this case, the ALJ found that Hayes could return to her past work as a biological aide as she actually performed the job (Tr. 31-32). The ALJ explicitly included limitations consistent with Hayes' ability when posing questions to the vocational expert (Tr. 904-905). The vocational expert testified that the position of biological aide could be performed by someone with Hayes' limitations. *Id.* The ALJ also compared Hayes' RFC with the physical and mental demands of this work (Tr. 32). Therefore, this Court finds that the ALJ supported his Step Four determination with substantial evidence. *See* 20 C.F.R. § 404.1560(b)(3).

### III. CONCLUSION

Because the ALJ's Listing 1.04 decision was reasonable, his RFC determination was supported by substantial evidence, his credibility determination was reasonable, and his Step Four finding was supported by substantial evidence, Hayes' motion for remand is **DENIED**. Accordingly, this Court **AFFIRMS** the ALJ's decision.

**SO ORDERED**

Dated this 24th day of April, 2012.

S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge